## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

**SOUTHERN CALIFORNIA ASSOCIATED NEWSPAPERS, a corporation d/b/a South Bay Daily Breeze, Respondent.**

No. 17310.

United States Court of Appeals Ninth Circuit.

Jan. 5, 1962.

Rehearing Denied Feb. 9, 1962.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Judith Bleich Kahn, Atty., N.L.R.B., Washington D. C., for petitioner.

O'Melveny & Myers, Charles G. Bakaly, Jr., Los Angeles, Cal., for respondent.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge.

This case is before the court on petition of the National Labor Relations Board for enforcement of its order issued against respondent on February 9, 1961, pursuant to § 10(c) of the National Labor Relations Act, 29 U.S.C. § 151 et seq.

The asserted unfair labor practice upon which the order is based occurred in December, 1959, in Redondo Beach, California, where respondent is engaged in the publication of a newspaper. The board found that respondent, in violation of § 8(a) (1) and (3) of the act,[1] questioned employee David Clark about his union membership and thereafter subjected him to discrimination in an effort

---

1. "Unfair labor practices
    "[Sec. 8] (a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157;
\* \* \* \* \* \* \*
"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: \* \* \* "

to impede or delay union organization of its mail room. It ordered that respondent cease and desist from the acts in question, offer reinstatement to Clark and make him whole for any loss of pay suffered.

Respondent contends that the record demonstrates, first, that there was in fact no discrimination and, second, that there was in fact no discouragement of union membership.

The charging party, David Clark, was, in December, 1959, employed by respondent as a fly-boy. His duties consisted of taking newspapers from the press conveyor to the mail room and there preparing them for further distribution. His superior was respondent's circulation manager Howard Collins. Clark, Collins and Clark's father had been on friendly terms for some years and had frequently discussed Clark's future. Clark and his father both were dissatisfied with Clark's pay and hours of work. Collins knew this.

On December 15, 1959, Clark, with his father's approval, joined the Mailers Local No. 9 of the International Typographical Union, AFL–CIO. He was assured that if he should lose his job with respondent through no fault of his own the union would get him another part-time job. He knew that in Los Angeles the rate of pay was about twice what he was receiving from respondent.

On December 18, 1959, Collins learned by questioning Clark that he had joined the union.

On the following day Collins told Clark that respondent was initiating a new trainee program under which the position of fly-boy was to serve as training post for district manager; that Clark had served a suitable training period and was now to be given the job of district manager. This was a job which Clark had sought in the past. Although the total pay was no greater than that which he had been receiving (if anything, it was less) the hours were better. Clark, however, now had his eye on a better paying job in Los Angeles. He was no longer interested in becoming district manager for respondent and on December 21, 1959, he so advised Collins, stating that he elected to continue as fly-boy. Collins advised him that he could not continue as fly-boy under these circumstances, as that job would have to be reserved for a district manager trainee. His employment terminated at this point. When Clark later returned to pick up his pay check, Collins told him the mail room was not yet ready for a union.

A factual issue was presented as to respondent's motives in discharging Clark. Respondent contended that the reasons given by Collins were true and that a valid economic motive thus existed. The trial examiner rejected this explanation. He stated, "In short it is found that Collins offered David a better job based on the belief that it might prevent David from being represented by the union in respondent's mail room."

Upon these facts the trial examiner concluded that since the termination of Clark's job as fly-boy was coupled with an offer of a better job it could not be said to have inhibited union organization. Further, he found that Collins had been mistaken in his belief that Clark, as district manager, would not continue to be represented by the union and that the fact was that the union could continue to represent him in his new capacity. He therefore concluded that respondent's actions with reference to Clark could not constitute discouragement of union membership.

The board rejected these conclusions although it adopted the findings of the trial examiner. Further, in support of the findings, it pointed out that respondent had no fly-boy replacement for Clark and that for more than a month his duties had to be assumed by other employees and that such a prompt discharge of Clark could hardly square with the asserted business purpose. The board concluded:

"We do not accept the Respondent's defense of economic motivation, as we find no support for it from any credited testimony. We

likewise do not accept the Respondent's assertion in its brief that 'the fact that the conduct was motivated by anti-union consideration is immaterial.' Accordingly, we find that by questioning Clark about his Union membership, and by offering him a promotion and then precipitately discharging him with the anti-union motivation found by the Trial Examiner, the Respondent has violated Section 8(a) (1) and (3) of the Act."

Respondent continues to press for its factual contention that in discharging Clark it was motivated by valid business purposes. In our view, the choice of the trial examiner and of the board is supported by substantial evidence. We shall therefore assume the fact to be that Clark's discharge was for an anti-union purpose.

Accepting this to be the fact, respondent first contends that there was no discrimination since Clark was offered a better job. The offer was an ultimatum, however. Clark was left no choice with reference to the job of fly-boy. It was from that job that he was discharged, and we are not concerned with his reason for refusing to accept the alternate job which was offered. As pointed out by the board, changes in the terms and conditions of employment based upon the fact of union membership are discriminations within the meaning of the act.

Respondent contends that if there was discrimination it was not of such a character as to discourage union membership. It points out that the district managers themselves performed mail room duties and, as the trial examiner found, that the union could continue to represent Clark as district manager. It asserts that under these circumstances the trial examiner was right in concluding that no discouragement of union membership could result from its actions.

Accepting respondent's conduct at face value as truly representing a company policy, we find that while a district manager may join a union, a fly-boy (and other mail room employees) may not. A fly-boy who is qualified for promotion therefore may secure such promotion notwithstanding union membership. But what of the unqualified fly-boy?

The area within which we are concerned with discouragement of union membership is not the district manager job; it is the job of fly-boy. And discouragement would certainly seem to be the result in that area by virtue of this act of discrimination.

We conclude that the board's order is entitled to enforcement insofar as it deals with respondent's discharge of David Clark.

The board also found that Collins' act of interrogating Clark respecting his union membership constituted an independent unfair labor practice. In its order, as paragraph 1(b), it required respondent to cease and desist from:

"(b) Interrogating its employees concerning their membership in or activities in behalf of said Union or any other labor organization in a manner constituting interference, restraint and coercion in violation of Section 8(a) (1) of the Act, or in any other manner interfering with restraining or coercing its employees in the exercise of their rights as guaranteed under Section 7 of the Act."

The prescribed notice as its second paragraph provided:

"We Will Not interrogate our employees concerning their membership in or activities on behalf of Mailers Local No. 9, International Typographical Union, AFL-CIO, or any other labor organization."

We find nothing in the record to support this action. The conversation was not shown to have been threatening or to have been conducted otherwise than in a friendly manner wholly consistent with the established relationship between Collins and Clark. The mere fact that an unfair labor practice followed as

a result of information gained from this conversation does not, standing alone, constitute the conversation itself an independent unfair labor practice.

Deleting paragraph 1(b) of the order and the second paragraph of the notice to which the order refers, decree will be entered enforcing the order as prayed.